UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

RODNEY ELLIOT,                          :

                Petitioner,             :      02 Civ. 5752 (SHS)(HBP)

        -against-                       :      REPORT AND
                                               RECOMMENDATION
DAVID L. MILLER,                        :

                Respondent.             :

----------------------------------X


                PITMAN, United States Magistrate Judge


        TO THE HONORABLE SIDNEY H. STEIN, United States

District Judge:


I.  Introduction


        Rodney Elliot seeks, by his pro se petition for, a writ

of habeas corpus pursuant to 28 U.S.C. § 2254, an Order vacating

the judgment of conviction entered on March 15, 1999, after a

jury trial in the Supreme Court of the State of New York, New

York County (Beal, J.), for one count of burglary in the second

degree and for one count of criminal possession of stolen prop-

erty in the fifth degree, in violation of New York Penal Law

Sections 140.25(2) and 165.40, respectively.  By that judgment,

petitioner was sentenced as a persistent felony offender to an

indeterminate term of imprisonment of fifteen years to life on

the burglary count and a concurrent one-year term on the stolen

property count.  Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that Elliot's petition be denied in all respects.

## II.  Facts

### A.  Background

#### 1.  The Prosecution's Case

At or about 2:30 p.m. on May 29, 1998, William Becker looked out a window from his Manhattan apartment and saw a man -- subsequently identified as petitioner -- on the roof of a West 10th Street building (Pet. App. Brf. at 6).[1]  Becker watched as petitioner walked down the building's fire escape, attempted to

---

[1]Respondent was only able to ascertain the second volume of the two-volume trial transcript in this matter (Declaration of Assistant Attorney General Willa J. Bernstein, in Opposition to the Writ of Habeas Corpus, dated November 7, 2002 ("Bernstein Decl."), at ¶ 2, n.1 and Exhibit I annexed thereto).  Wherever possible, I cite to the trial transcript.  In all other instances, I cite to the statements of facts set forth in petitioner's brief ("Pet. App. Brf.") and the prosecution's brief ("Resp't App. Brf.") to the Appellate Division of the Supreme Court, First Department, which are annexed as Exhibits A and C, respectively, to the Bernstein Decl.  There does not appear to be any material dispute as to the facts concerning the testimony at trial.  However, where the briefs are in conflict, I have relied on the version of events set forth in petitioner's brief.  Since the version of the facts in petitioner's brief is, presumably, the view of the evidence and the proceedings most favorable to petitioner, petitioner is not prejudiced by my reliance on the briefs.

force open an apartment window using a knife or screwdriver and, eventually, entered the apartment. Becker called 911 and reported what he had witnessed, including a description of petitioner -- an African-American male, wearing gray pants, white socks, a blue shirt with a light colored undershirt, a baseball cap turned backwards and sunglasses on the top of his head (Pet. App. Brf. at 6).

New York City Police Sergeant Thomas Horvath and Police Officers Steven Barbera and Joseph Torres received a radio call reporting a burglary in progress and responded to Becker's apartment. Upon arrival, the officers spoke with Becker who told them what he had seen and provided a description of petitioner (Pet. App. Brf. at 6; Tr.[2] 127-28, 143, 170-71). Becker then took Officer Barbera to the window from which he had witnessed the events. From that window, Barbera was able to determine that Becker had been looking at an open window on the sixth floor of 145 West 10th Street (Pet. App. Brf. at 6-7; Tr. 128-32, 146-50, 161-162, 171-73, 214-17, 353-55). Using a pair of opera glasses provided by Becker, Barbera saw petitioner "stick his head out the window" of the apartment he had entered. Barbera saw petitioner "clearly" from the waist up; he was wearing a black

_____

[2]"Tr." refers to the second volume of the transcript of petitioner's trial.

3

baseball cap turned backwards, gold rimmed glasses and a blue
sweatshirt (Pet. App. Brf. at 7; Tr. 131-34, 137-41, 148, 151-55,
160-67).

Barbera radioed petitioner's location to his fellow
officers (Tr. 135-36, 151-56, 161-62, 164, 175-76, 357-58) who
went to the roof and fire escape of 145 West 10th Street and
banged on the door to apartment 6C (Tr. 344-46, 357).  One of the
officers noticed that sheets were hanging out of a window in
apartment 6C, leading into a window in apartment 5C (Tr. 332-37).
While searching the courtyard adjacent to 145 West 10th Street,
officers found petitioner hiding underneath a table; he was
wearing a blue shirt with a grey undershirt and gray pants (Pet.
App. Brf. at 7-8; Tr. 257, 265-66, 283).  After petitioner was in
custody, one of the officers patted down his clothing and discov-
ered jewelry inside a paper bag in petitioner's pants pocket
(Pet. App. Brf. at 8; Tr. 257-58, 283-84, 298-300).

Petitioner was then brought around to the front of 145
West 10th Street so that Becker could identify him (Pet. App.
Brf. at 8; Tr. 180, 224, 257, 266-67, 300-01, 348-49).  Sergeant
Horvath asked Becker if he recognized petitioner, who, at the
time, was hand-cuffed and standing in close proximity to four or
five uniformed police officers (Pet. App. Brf. at 8; Tr. 223-26,
269, 349-50, 359-61).  Becker responded, "It's either him or his

twin brother" (Pet. App. Brf. at 8, n.5; Resp't App. Brf. at 9).

Becker further stated, "It really looks like the guy;" however,

he was not "100%" or "absolutely sure" that petitioner was the

man he observed enter the apartment through the window (Pet. App.

Brf. at 8; Resp't App. Brf. at 9; Tr. 349, 360-61, 365-67, 370).

After instructing the other police officers to step away from

petitioner, Horvath asked Becker to look again (Pet. App. Brf. at

8; Resp't App. Brf. at 9; Tr. 344-50, 362-67).  Becker requested

that petitioner lift his pants legs so that he could view his

socks (Pet. App. Brf. at 8; Tr. 349-50, 362-66).  After viewing

petitioner's white socks, Becker identified him as the person he

saw breaking into the apartment (Pet. App. Brf. at 8; Tr. 362-

64).  During the course of Becker's identification, petitioner

pleaded with Becker, stating in substance:  "It wasn't me.  You

know it wasn't me.  Come on, you know it wasn't me" (Tr. 368).

Victoria Boomsma, who lived in apartment 6C at 145 West

10th Street, spoke with Officer Torres when she returned to her

apartment that evening.  Boomsma informed Torres that she had not

given anyone permission to be in her apartment that day, and she

confirmed that the jewelry recovered from petitioner's pants

pocket was hers (Pet. App. Brf. at 9; Tr. 181-83, 222, 227-28).

In addition, Boomsma found in her apartment a screwdriver with an

earring embedded in the handle that matched one of the earrings

found on petitioner, as well as a black leather baseball cap
(Pet. App. Brf. at 9; Tr. 186-87).

At the precinct, following petitioner's arrest,
Officer Barbera recognized petitioner as the person he saw
looking out the window of the apartment in question (Tr. 157-58,
163). After being advised of his rights and signing a _Miranda_
card acknowledging that he understood and waived those rights,
petitioner was interviewed by New York City Police Detective
Ronald Wrench. During the interview, petitioner gave the follow-
ing written statement:

> Me and Larry went to this building with the plan
> of committing a crime associated with burglary. How-
> ever, the complete plan was Larry's because this was
> the first time that I frequent Greenwich Village for
> such a purpose and was unfamiliar with the area.
>
> Larry pick the building and it was he who they
> seen in and also exiting the apartment because I never
> went into the building nor would I attempt such a stunt
> as climbing from a window on sheets at my age and due
> to the fact I'm not crazy.
>
> However, Larry manage to escape capture and came
> down the hallway where the officers were. He threw me
> the bag with the items in it.
>
> I thought wrong, because I felt I was set up by
> Larry and the fact that I never had went into the
> building nor into an apartment of which the crime took
> place. Plus the witness who claimed they seen me lied,
> because it's evident that, aside from me being in
> possession of the items, there is no proof or evidence
> I was in that apartment, and the witness plus the
> officers who claimed to have seen me just stated so
> because there was no one else they caught.

(Tr. 194, 202-03, 239-48, 311, 315-16, 324-25, 409-10).

Petitioner was asked for more information about his accomplice "Larry." Although petitioner stated that he did not know Larry's last name, he described him as approximately 37-years old, five-feet seven inches tall and weighing 155 to 165 pounds (Tr. 310, 317-18, 321-22). Using this information, a computer search was run which generated approximately sixty photographs. Petitioner was shown these photographs in groups of six and, after reviewing about thirty of them, identified an individual that he was "absolutely sure" was Larry. However, upon further investigation, in turned out that the individual petitioner identified -- Larry Howell -- was in jail on the day in question (Tr. 310, 317-28).

At trial, Becker identified petitioner as the man he saw on the roof and fire escape who forced open a window and, subsequently, entered the sixth-floor apartment (Resp't App. Brf. at 13). Officer Barbera also identified petitioner as the man he saw looking out of the apartment window (Tr. 134-35, 157-60).

## 2. The Defense's Case

Petitioner testified on his own behalf. First, petitioner testified that he had been convicted of burglary in 1993, attempted burglary in 1986 and also had three misdemeanor

convictions (Tr. 391-92, 422-23, 433).  With respect to the events leading up to his arrest, petitioner testified that he had agreed to help an individual known to him as "Larry" retrieve laptop computers hidden near West 10th Street, and that Larry had promised to give petitioner a laptop in exchange for his assistance (Tr. 393-94, 421-24).  Petitioner explained that Larry led him into the backyard of a building on Waverly Place and, from there, they climbed into the yard behind 145 West 10th Street (Tr. 394-95).  Petitioner testified that only Larry entered 145 West 10th Street; he waited for Larry in the backyard of the laundromat adjacent to 145 West 10th Street (Tr. 395-97).

Approximately five or ten minutes after Larry left, petitioner heard police radios and saw officers inside 145 West 10th Street and on the roof (Tr. 398-400).  Petitioner then testified that Larry called to him and asked for assistance in getting over the wall that separated the laundromat from 145 West 10th Street (Tr. 400).  Unable to assist him, petitioner stated that Larry then threw him a brown paper bag, which petitioner stuffed into his pocket without looking at it (Tr. 401, 433).  Larry told petitioner to wait for him, but petitioner never saw Larry again.  Petitioner hid under a table, where he was found by police officers (Tr. 401-04).

Petitioner further testified that he believed Becker was not really sure if petitioner was the same person had seen on the roof and fire escape. Rather, Sergeant Hovarth and other officers talked to Becker alone, and upon their return, Becker asked to see his socks. Petitioner claims that Becker stated to police that petitioner's clothes were similar to those worn by the man he saw and that petitioner might be the same person he saw earlier (Tr. 404-05).

Petition also claims that he specifically asked for an attorney before making any statements, and that the detective told him that "we [are] not trying to charge you with anything . . . [w]e just want to know who the other guy" is. Nevertheless, petitioner admitted signing the Miranda card and giving both an oral and written statement (Tr. 406-07, 436). In addition, petitioner claims that he was mistaken about the computer photograph he identified as Larry (Tr. 412-13, 439), and that neither the sunglasses nor the baseball cap found in the apartment were his (Tr. 417). Petitioner ultimately testified that he was never on the roof of 145 West 10th Street or in apartment 6C, and that he did not commit burglary (Tr. 413-14, 432).

### 3.   Conviction and Sentencing

On February 1, 1999, a jury found petitioner guilty of burglary in the second degree and criminal possession of stolen property in the fifth degree.

Prior to sentencing, the prosecution submitted an application requesting that the court sentence petitioner as a persistent felony offender pursuant to New York Penal Law Section 70.10 and New York Criminal Procedure Law Section 400.20.  The prosecution's papers explained that petitioner had three prior felony convictions, only two of which were within the past ten years (Sent. Tr[3]. 2).

As indicated above, petitioner was sentenced on March 15, 1999 as a persistent felony offender to an indeterminate term of imprisonment of fifteen years to life on the burglary count and a concurrent one-year term on the stolen property count (Sent. Tr. 12).

---

[3]"Sent. Tr." refers to the transcript of petitioner's sentencing hearing.

B.  <u>Procedural History</u>

1.  <u>Direct Appeal</u>

Petitioner, assisted by counsel, appealed his conviction to the Appellate Division, First Department, asserting three claims:  (1) the show-up identification was unduly suggestive because petitioner was hand-cuffed, surrounded by police officers and the identifying witness was pressured into making the identification; (2) the Trial Court erred in allowing the jurors to take notes without instructing them on the proper use of those notes, and (3) the Sentencing Court did not follow the proper procedure for adjudicating petitioner a persistent felony offender (Pet. App. Brf. at i-ii, 15, 19, 22).

Petitioner also filed a supplemental <u>pro</u> <u>se</u> brief in which he raised the following additional claims:  (1) the Trial Court improperly admitted the 911 tape of the identifying witness because it was hearsay that did not fall under the present sense impression exception; (2) the prosecutor's closing remarks were prejudicial and improperly expressed the prosecutor's personal opinion of the petitioner's character; (3) the Trial Court should have instructed the jury to disregard an officer's testimony concerning a missing voucher for sunglasses recovered from petitioner due to a violation of N.Y. Crim. Proc. L. § 240.20,

and (4) the Trial Court's <u>Sandoval</u> ruling prejudiced petitioner
by permitting petitioner to be questioned regarding prior bur-
glaries (Petitioner's <u>Pro Se</u> Supplemental Brief to the Appellate
Division, First Department, dated March 2000 ("Pet. <u>Pro Se</u> App.
Brf."), at 13-15, annexed as Ex. A to Bernstein Decl.).

The Appellate Division unanimously affirmed peti-
tioner's conviction, stating:

> Defendant's suppression motion was properly de-
> nied. The showup identification was not unduly sugges-
> tive (<u>see</u>, <u>People v Duuvon</u>, 77 NY2d 541, 545). The
> police sergeant's balanced comment, made after the
> witness expressed some uncertainty as to whether defen-
> dant was the person he observed breaking into an apart-
> ment in another building, that the police needed to
> know whether the witness was certain or not in order to
> decide whether they should continue their search for
> the burglar, did not pressure the witness to identify
> defendant.
>
> Defendant acknowledges that his argument that the
> sentencing court did not follow the procedures set
> forth in CPL 400.20 in adjudicating him a persistent
> felony offender is unpreserved for our review and we
> decline to do so in the interest of justice (<u>see</u>,
> <u>People v Banks</u>, 265 AD2d 163, <u>lv denied</u> 94 NY2d 819)
> because, as distinguished from <u>People v Jones</u>, 268 AD2d
> 356, there was sufficient compliance with the statutory
> notice and hearing provisions.
>
> Defendant's remaining contentions, including those
> contained in his <u>pro se</u> supplemental brief, are unpre-
> served and we decline to review them in the interest of
> justice. Were we to review these claims, we would
> reject them.

<u>People v. Elliot</u>, 283 A.D.2d 183, 183-184, 726 N.Y.S.2d 7, 8
(1st Dep't 2001).

Petitioner's appellate counsel sought leave to appeal
to the New York Court of Appeals, appending to his application
copies of the two briefs filed on petitioner behalf with the
Appellate Division (Letter of Luke Martland, Esq. to the New York
Court of Appeals, dated May 9, 2001, annexed as Ex. E to Resp't
App.). Counsel later supplemented the application for leave to
appeal by making an additional submission concerning the Sentenc-
ing Court's alleged failure to follow the proper procedures for
adjudicating petitioner as a persistent felony offender (Letter
of Luke Martland, Esq. to the New York Court of Appeals, dated
May 31, 2001, annexed as Ex. E to Resp't App.). Petitioner also
filed a <u>pro se</u> application for leave to appeal, in which he
raised the same issues that were raised in his supplemental <u>pro
se</u> brief to the Appellate Division (Affidavit in Support of
Application for Certificate Granting Leave to Appeal to the Court
of Appeals, sworn to May 9, 2001, annexed as Ex. E to Resp't
App.). The Court of Appeals denied petitioner's application for
leave to appeal on July 2, 2001. <u>People v. Elliot</u>, 96 N.Y.2d
901, 756 N.E.2d 86, 730 N.Y.S.2d 798 (2001).

## 2. <u>Post-Conviction Collateral Attacks</u>

Petitioner filed three collateral attacks on his
conviction in state court. In his first two motions, petitioner

sought to vacate the judgment of conviction pursuant to New York Criminal Procedure Law Section 440.10.  In his third motion, petitioner, through counsel, sought both to vacate the judgment of conviction and set aside the sentence pursuant to New York Criminal Procedure Law Sections 440.10 and 440.20.

In the first post-conviction motion, petitioner argued that he had newly discovered evidence that the 911 tape, in which Becker gave a description of petitioner, had been "tampered with and altered" and that the prosecution was aware of the alleged evidence tampering.  In support of his claim, petitioner argued, principally, that when he first heard the tape while awaiting trial, Becker said that petitioner was wearing "a black baseball hat;" however, when the tape was played at trial, Becker stated that petitioner was wearing a "black leather hat."  Petitioner also noted other purported discrepancies in the description of the hat, citing Becker's signed witness statement, the prosecution's disclosure form listing property obtained from petitioner, Becker's testimony at trial and the "sprint-print-out" of the 911 call.  Petitioner also argued that he was denied due process because the Trial Judge did not hold a hearing to explore petitioner's claim of evidence tampering (Petitioner's N.Y. Crim. Proc. L. § 440.10 Motion, dated March 23, 1999 ("3/99 440.10 Motion"), annexed as Ex. G to Resp't App.).  The Trial Court

denied petitioner's motion without opinion on May 24, 1999.  On June 15, 1999, petitioner applied for leave to appeal to the Appellate Division, First Department, which was denied on September 16, 1999.  Petitioner filed a renewed application for leave to appeal on February 3, 2000, which was also denied.

In his second post-conviction motion, petitioner again argued that the judgment of conviction was "procured by fraud and misrepresentation" based on the putative alteration of the 911 recording.  Specifically, petitioner argued that he had newly discovered evidence supporting his claim that the 911 tape had been altered.  He offered an "original report," obtained from the New York City Police Department, of the "sprint print-out" of the 911 call, which noted that the perpetrator was wearing a "BACK-WARDS BBALL CAP," but did not specifically state whether it was a leather baseball cap (Petitioner's N.Y. Crim. Proc. L. § 440.10 Motion, dated December 12, 2001 ("12/01 440.10 Motion"), annexed as Ex. H to Resp't App.).  The Trial Court denied petitioner's motion without opinion on January 18, 2002.  On February 5, 2002, petitioner applied for leave to appeal to the Appellate Division, which was denied on May 23, 2002.

In his third post-conviction motion, petitioner sought to vacate the sentence pursuant to New York Criminal Procedure Law Section 440.20.  Petitioner argued that the sentence should

be vacated on the grounds that: (1) the Trial Judge failed to follow the procedures set forth in N.Y. Crim. Proc. L. § 400.20 in adjudicating him a persistent felony offender petitioner; (2) the judicial fact-finding process which led to his enhanced sentence was violative of the Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Ring v. Arizona, 536 U.S. 584 (2002); (3) he received ineffective assistance of counsel at sentencing, and (4) he was denied a fair trial based on insufficiency of the evidence and the Trial Court's Sandoval ruling (Petitioner's N.Y. Crim. Proc. L. § 440.20 Motion, dated October 16, 2003, annexed as Ex. C to Petitioner's Supplemental Memorandum, dated November 3, 2004 and filed November 9, 2004 (Docket Item 14) ("Pet. 11/04 Mem.")).

The Honorable Marcy L. Kahn, Justice, Supreme Court of the State of New York, appointed counsel to assist petitioner with respect to this motion. Counsel, in turn, filed supplemental motion papers raising only the following issues: (1) that the procedures followed during sentencing were violative of Apprendi and Ring and (2) that petitioner received ineffective assistance of counsel at sentencing (Petitioner's N.Y. Crim. Proc. L. §§ 440.10 and 440.20 Motion, dated April 29, 2004 ("4/04 440.10 Motion"), annexed as Ex. F to Pet. 11/04 Mem.). Justice Kahn denied petitioner's third post-conviction motion in its

entirety on August 30, 2004 in a 26-page opinion (August 30, 2004
Order of the Honorable Marcy L. Kahn, Justice, Supreme Court of
the State of New York ("8/04 Order"), at 1, 26, annexed as Ex. B
to Pet. 11/04 Mem.).

On September 9, 2004, petitioner made application for
leave to appeal to the Appellate Division, which was denied on
October 20, 2004.  By letter dated September 11, 2004, petitioner
requested reconsideration of the August 30, 2004 Order, arguing
that the court erred in finding that Apprendi did not apply to
his case because his conviction was not yet final on direct
review when Apprendi was decided.  By Order dated October 26,
2004, Justice Kahn denied petitioner's motion for reconsidera-
tion, finding that, although petitioner was correct that Apprendi
did apply to his case, petitioner's Apprendi violation claim was,
nevertheless, meritless (October 26, 2004 Order of the Honorable
Marcy L. Kahn, Justice, Supreme Court of the State of New York,
at 6, annexed as Ex. L to Pet. 11/04 Mem.).

### 3.  Petitioner's Habeas Corpus Petition

Elliot's habeas petition raises the following claims:
(1) petitioner was prejudiced by the Trial Court's Sandoval
ruling, which allowed petitioner's two prior convictions for
burglary and attempted burglary and three unspecified misdemean-

ors to be used to impeach petitioner's credibility; (2) the 911 tape recording of an identifying witness was allegedly altered; (3) the Trial Court improperly admitted the 911 tape because it was impermissible hearsay, and (4) the Trial Court did not follow the proper procedure under N.Y. Crim. Proc. L. § 400.20 for adjudicating him a persistent felony offender (Pet. ¶ 12(A) and Petitioner's Memorandum, dated June 14, 2002 ("Pet. Mem."), annexed thereto).[4]  Petitioner has submitted numerous additional papers to my Chambers elaborating on the arguments raised in his habeas petition.

By Order dated May 4, 2004, I granted petitioner's application to hold the present petition in abeyance until 30-days after a decision was rendered on his third post-conviction motion (Docket Item 13).  In accordance with my Order, petitioner notified the Court that his third post-conviction motion and his application for leave to appeal had been denied (see Pet. 11/04 Mem. at 3-4).

Construing petitioner's November 2004 memorandum leniently in light of his pro se status, petitioner appears to be

---

[4]Petitioner had also asserted a Fourth Amendment claim and an insufficiency claim.  However, faced with respondent's argument that these claims were unexhausted, petitioner withdrew both of these claims.  See Petitioner's Traverse, dated November 18, 2002 ("Pet. Traverse"), at I; Undated Letter from Petitioner to my Chambers, postmarked November 22, 2002; Letter from Petitioner to my Chambers, dated January 25, 2003.

requesting that the following two additional issues also be considered in connection with his habeas petition -- (5) that the procedures followed during sentencing were violative of <u>Apprendi</u> and <u>Ring</u> and (6) that petitioner received ineffective assistance of counsel at sentencing (<u>see</u> Pet. 11/04 Mem. at 4, 31).

III.  <u>Analysis</u>

    A.  Three of Petitioner's
       <u>Claims Are Procedurally Barred</u>

      Respondent argues that three of petitioner's claims are procedurally barred from habeas review and should be dismissed. These claims include:  (1) petitioner's <u>Sandoval</u> claim; (2) petitioner's contention that the Trial Court improperly admitted the 911 tape because it was impermissible hearsay, and (3) petitioner's contention that the Trial Court did not follow the proper procedure for adjudicating petitioner as a persistent felony offender.  Respondent argues that because the Appellate Division expressly found the above claims unpreserved based upon an adequate and independent state procedural ground, federal habeas review of these claims is procedurally barred (<u>see</u> Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated November 7, 2002 ("Resp't Mem."), at 26-31, 39-43, 47-49).

Assuming that petitioner's above claims state federal
claims that are cognizable in a habeas corpus proceeding, these
claims should, nevertheless, be dismissed because they are
procedurally barred.  A habeas petitioner's constitutional claim
can be procedurally barred where it is not asserted in state
court proceedings in accordance with state procedural require-
ments and the state courts rely on that violation of state
procedural requirements to reject the claim.  As the Court of
Appeals for the Second Circuit has explained:

> The independent and adequate state ground doctrine
> first arose in the context of direct appeals to the
> Supreme Court from final judgments of the state courts.
> Under that doctrine the Supreme Court "will not review
> a question of federal law decided by a state court if
> the decision of that court rests on a state law ground
> that is independent of the federal question and ade-
> quate to support the judgment."  Coleman v. Thompson,
> 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640
> (1991).  Moreover, "[t]his rule applies whether the
> state law ground is substantive or procedural."  Id.
>
> . . . .
>
> The doctrine also applies in the context of fed-
> eral courts reviewing applications for a writ of habeas
> corpus . . . .  [I]nvoking principles of comity and
> federalism . . . federal habeas courts faced with an
> independent and adequate state ground of decision defer
> in the same manner as does the Supreme Court on direct
> review.
>
> . . . .
>
> An exception obtains only if the petitioner demon-
> strates both good cause for and actual prejudice re-
> sulting from his noncompliance with the state's proce-
> dural rule.  See Engle v. Isaac, 456 U.S. 107, 129, 102

20

S.Ct. 1558, 71 L.Ed.2d 783 (1982); <u>Wainwright v. Sykes</u>,
433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

<u>Garcia v. Lewis</u>, 188 F.3d 71, 76-77 (2d Cir. 1999).  <u>See also</u>
<u>Cotto v. Herbert</u>, 331 F.3d 217, 239-41 (2d Cir. 2003) (discussing
whether an asserted bar is "adequate" to preclude federal habeas
review); <u>Rhagi v. Artuz</u>, 309 F.3d 103, 106 (2d Cir. 2002) ("Ab-
sent a showing of cause and prejudice, it is settled law that an
independent and adequate state law ground for a state court
conviction cannot be disturbed on habeas."), <u>citing</u> <u>Coleman v.</u>
<u>Thompson</u>, 501 U.S. 722, 729-31 (1991); <u>Morales v. Artuz</u>, 98 Civ.
6558 (JGK), 2000 WL 1693563 at *5-*6 (S.D.N.Y. Nov. 13, 2000),
<u>aff'd</u>, 281 F.3d 55 (2d Cir. 2002); <u>Norwood v. Hanslmaier</u>,93 CV
3748, 1997 WL 67669 at *2 (E.D.N.Y. Feb. 11, 1997).

Dismissal of a claim on the ground that consideration
of the merits is precluded by an adequate and independent state
procedural ground is appropriate where the last reasoned state
court decision expressly relies on a state procedural bar:

> In <u>Harris[ v. Reed</u>], 489 U.S. 255, 109 S.Ct. 1038, 103
> L.Ed.2d 308 (1989)], the Court held that "a procedural
> default does not bar consideration of a federal claim
> on either direct or habeas review unless the last state
> court rendering a judgment in the case clearly and
> expressly states that its judgment rests on a state
> procedural bar." <u>Harris</u>, 489 U.S. at 263, 109 S.Ct.
> 1038 (internal quotation marks omitted).  We apply the
> <u>Long/Harris</u> presumption to the last "reasoned state
> judgment" . . . .  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S.
> 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000). See also

Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have

repeatedly stated that in order for federal habeas review to be

procedurally barred, a state court must actually have relied on a

procedural bar as an independent basis for its disposition of the

case, and the state court's reliance on state law must be unam-

biguous and clear from the face of the opinion.").

As long as the state court relies on a procedural bar

as an independent basis for its decision, a claim will be pro-

cedurally barred on federal habeas review even where a state

court addresses the merits of the claim in the alternative.  As

the Court of Appeals has noted:

> This court has held that "federal habeas review is
> foreclosed when a state court has expressly relied on a
> procedural default as an independent and adequate state
> ground, even where the state court has also ruled in
> the alternative on the merits of the federal claim."
> Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990);
> Harris, 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10
> ("[A] state court need not fear reaching the merits of
> a federal claim in an alternative holding."); Wedra v.
> Lefevre, 988 F.2d 334, 338-39 (2d Cir. 1993).

Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).  See also

Fama v. Comm'r of Corr. Servs., supra, 235 F.3d at 810; Johnson

v. Dufrain, 99 Civ. 12019 (DC), 2001 WL 406261 at *5 (S.D.N.Y.

Apr. 20, 2001); Torres v. Irvin, 33 F. Supp.2d 257, 264 (S.D.N.Y.

1998).

In this case, the Appellate Division expressly found that, except for petitioner's claim that the showup identification was unduly suggestive, all the other claims petitioner raised on direct appeal including his claims concerning the Sandoval ruling, the admission of the 911 tape and the procedure used to adjudicate petitioner as a persistent felony offender, were unpreserved:

> Defendant acknowledges that his argument that the sentencing court did not follow the procedures set forth in CPL 400.20 in adjudicating him a persistent felony offender is unpreserved for our review and we decline to do so in the interest of justice (see, People v Banks, 265 AD2d 163, lv denied 94 NY2d 819) because, as distinguished from People v Jones, 268 AD2d 356, there was sufficient compliance with the statutory notice and hearing provisions.

> Defendant's remaining contentions, including those contained in his pro se supplemental brief, are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them.

People v. Elliot, supra, 283 A.D.2d at 183-184, 726 N.Y.S.2d at 8. Further, Justice Kahn, in ruling on petitioner's third post-conviction motion, held that:

> [I]t is clear that the defendant could have raised [his claims concerning the procedure utilized in adjudicating him a persistent felony offender] before the sentencing judge, thereby preserving them as matters of record subject to review on appeal. As he failed to do so, and there appears to be no justification for such failure, his motion on this ground is denied. (CPL § 440.10[3][c]).

8/04 Order at 16.

Petitioner argues that the Appellate Division's deci-
sion finding these claims unperserved was an erroneous applica-
tion of state law. Petitioner's argument is misguided. As
explained by the Court of Appeals for the Second Circuit in <u>Rhagi
v. Artuz</u>, 309 F.3d 103, 107 (2d Cir. 2002):

> The relevant question is not whether the state court
> was "right or wrong" in its decision, but rather
> whether its holding had a "fair or substantial basis in
> state law." <u>Garcia</u> [,<u>supra</u>,] 188 F.3d at 77-78 (cita-
> tions omitted) (internal quotation marks omitted).
> Even if the Appellate Division was incorrect in its
> ruling, we do not believe that reasonable jurists could
> debate that there was in this case, at the very least,
> a fair or substantial basis in state law for its deci-
> sion or, therefore, that there was an independent and
> adequate state-law procedural bar precluding federal
> habeas review. <u>See</u> <u>Slack</u> [<u>v. McDaniel</u>, 529 U.S. 473,
> 484 (2000)].

<u>See</u> <u>also</u> <u>Bell v. Poole</u>, 00 CV 5214 (ARR), 2003 WL 21244625 at *10
(E.D.N.Y. April 10, 2003), <u>aff'd</u> <u>without</u> <u>published</u> <u>opinion</u>, 103
Fed. Appx. 691 (2d Cir. 2004) (same). Here, trial counsel failed
to object to the court's <u>Sandoval</u> ruling and also failed to
object to petitioner's adjudication as a persistent felony
offender (Resp't Mem. at 28, 48; Sent. Tr. 11-12). In addition,
trial counsel objected to the admissibility of the 911 tape only
on the ground that it was a prior consistent statement; he did
not object on the ground that the tape was hearsay that did not
fall under the present sense impression exception as petitioner

24

argued on direct appeal (Resp't Mem. at 39-41).  As a result of
trial counsel's failure to comply with New York's contemporaneous
objection rule, the Appellate Division's decision finding these
claims unperserved was not only fairly and substantially based on
an independent and adequate state grounds, but was clearly
correct.  See Rodriguez v. Schriver, 392 F.3d 505, 510 (2d Cir.
2004) ("'[W]e have observed and deferred to New York's consistent
application of its contemporaneous objection rules.'"), quoting
Garcia v. Lewis, supra, 188 F.3d at 79 (holding that the failure
to comply with New York's contemporaneous objection rule is an
independent and adequate state ground barring federal habeas
review); Davis v. Senkowski, 97-CV-2328 (JG), 1998 WL 812653 at
*3 (E.D.N.Y. Aug. 6, 1998) ("Under New York law, in order to
preserve a claim for appeal, a defendant must raise the same
specific ground for that complaint at the trial that he then
raises on appeal."), citing N.Y. Crim. Proc. L. § 470.05(2).

     Petitioner might be able to overcome this procedural
bar by showing cause for and prejudice from his procedural
default or by showing that a failure to consider his claim would
result in a fundamental miscarriage of justice.  See Coleman v.
Thompson, supra, 501 U.S. at 750 ("In all cases in which a state
prisoner has defaulted his federal claims in state court pursuant
to an independent and adequate state procedural rule, federal

habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."); Engle v. Isaac, 456 U.S. 107, 129 (1982) ("[W]hen a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice."). Although petitioner cites to both Coleman and Engle in the memorandum appended to his habeas petition, he has not, however, even attempted to make a showing of cause and actual prejudice with respect the above-mentioned claims.[5]

Accordingly, petitioner's claims concerning the Trial Court's Sandoval ruling, the Trial Court's admission of the 911 tape and the Trial Court's failure follow the proper procedures for adjudicating petitioner as a persistent felony offender, should all be dismissed on the ground that they are procedurally barred.

---

[5]Petitioner attempts, albeit mistakenly, to argue cause and prejudice with respect to his N.Y. Crim. Proc. L. § 440.10 motions being denied without a hearing or an opinion, as well as with respect to his claim of receiving ineffective assistance of counsel during sentencing. Both of these issues are discussed infra in Sections C.1.(c) and C.3.(b), respectively.

B.    Standard of Review For
      Petitioner's Remaining Claims


     Where the state court has addressed a habeas peti-

tioner's claims on the merits, a habeas petitioner must meet a

stringent standard before a federal court can issue the writ.

Specifically, 28 U.S.C. § 2254(d) provides that in such a situa-

tion, habeas relief may be granted only when the Trial Court's

decision

          (1) resulted in a decision that was contrary to, or
          involved an unreasonable application of, clearly estab-
          lished Federal law, as determined by the Supreme Court
          of the United States; or

          (2) resulted in a decision that was based on an unrea-
          sonable determination of the facts in light of the
          evidence presented in the State court proceeding.

     The Supreme Court has explained the alternative stan-

dards contained in the former paragraph as follows:

          First, we have explained that a decision by a
          state court is "contrary to" our clearly established
          law if it "applies a rule that contradicts the govern-
          ing law set forth in our cases" or if it "confronts a
          set of facts that are materially indistinguishable from
          a decision of this Court and nevertheless arrives at a
          result different from our precedent." Williams v.
          Taylor, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146
          L.Ed.2d 389 (2000).  See also Early v. Packer, 537 U.S.
          3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per
          curiam). . . .

          Second, respondent can satisfy § 2254(d) if he can
          demonstrate that the [State] Court's decision involved
          an "unreasonable application" of clearly established
          law.  As we have explained:

27

> "[A] federal habeas court may not issue the writ
> simply because that court concludes in its inde-
> pendent judgment that the state-court decision
> applied [a Supreme Court case] incorrectly. See
> Bell v. Cone, 535 U.S. 685, 698-699, 122 S.Ct.
> 1843, 152 L.Ed.2d 914 (2002); Williams, supra, at
> 411, 120 S.Ct. 1495. Rather, it is the habeas
> applicant's burden to show that the state court
> applied [that case] to the facts of his case in an
> objectively unreasonable manner."

> Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct.
> 357, 154 L.Ed.2d 279 (2002) (per curiam).

Price v. Vincent, 538 U.S. 634, 640-41 (2003); accord Brown v.

Payton, 125 S.Ct. 1432, 1438 (2005); see also Lockyer v. Andrade,

538 U.S. 63, 70-72 (2003); Brown v. Artuz, 283 F.3d 492, 500-01

(2d Cir. 2002).

In addition to the definition of "unreasonable applica-

tion" set forth above, a state court may unreasonably apply

Supreme Court precedent "if the state court unreasonably extends

a legal rule established by the Supreme Court or if it unreason-

ably fails to extend a legal rule to a context in which the rule

reasonably should apply." Serrano v. Fischer, 412 F.3d 292, 296-

97 (2d Cir. 2005), cert. denied, 126 S.Ct. 1357 (2006).

"Unreasonableness is determined by an 'objective'

standard." Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir.

2005), petition for cert. filed, No. 05-1019 (Feb. 9, 2006),

quoting Williams v. Taylor, 529 U.S. 362, 409 (2000). In order

for a state court's application of Supreme Court precedent to be

unreasonable, "[s]ome increment of incorrectness beyond error" is required. Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005), cert. denied, -- S.Ct. --, No. 05-943, 2006 WL 219394 (Mar. 27, 2006) (internal quotation marks omitted); accord Brown v. Artuz, supra, 283 F.3d at 500-01; Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). However, "the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999) (en banc); accord Gersten v. Senkowski, supra, 426 F.3d at 607. The nature of the rule in issue also impacts the assessment of the reasonableness of the state court's action.

> [W]hile very specific rules may not permit much leeway in their interpretation, the same is not true of more general rules, the meaning of which "must emerge in application over the course of time." [Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)]. "The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Id.

Serrano v. Fischer, supra, 412 F.3d at 297.

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, supra, 529 U.S. at 412. "That federal law, as defined by the Supreme Court,

may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002). "A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d 104, 109 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

In order to be entitled to the deferential standard of review, the state courts must have resolved a petitioner's claims "on the merits." Cotto v. Herbert, supra, 331 F.3d at 230. "A state court adjudicates a claim 'on the merits' for purposes of § 2254(d) when it '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment . . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.'" Serrano v. Fischer, supra, 412 F.3d at 296, quoting Gutierrez v. McGinnis, 389 F.3d 300, 304 (2d Cir. 2004). A state court's summary statement that a claim is "without merit," without further explanation, constitutes an adjudication on the merits for purposes of § 2254(d). Serrano v. Fischer, supra, 412 F.3d at 296; see Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005).

When the state court has not resolved a habeas peti-
tioner's claim on the merits, the state court's decision is
subject to de novo review.  Cotto v. Herbert, supra, 331 F.3d at
230; Diaz v. Herbert, 317 F. Supp.2d 462, 470 (S.D.N.Y. 2004).

In this case, as noted above, petitioner's remaining
claims were first made post-conviction by way of N.Y. Crim. Proc.
L. §§ 440.10 and 440.20 motions.  These remaining claims are (1)
that the 911 tape was allegedly altered; (2) that the procedures
followed during sentencing were violative of Apprendi and Ring,
and (3) that petitioner received ineffective assistance of
counsel at sentencing (see 3/99 440.10 Motion; 12/01 440.10
Motion; 4/04 440.10 Motion).

Petitioner's first two Section 440.10 motions addressed
the alleged alteration of the 911 tape recording.  Both motions
were denied by Justice Beal without opinion, and the Appellate
Division denied leave to appeal also without opinion.  A state
court's decision denying relief without opinion is considered a
decision on the merits and, therefore, is entitled to deferential
review under 28 U.S.C. § 2254(d).  See Dallio v. Spitzer, 343
F.3d 553, 560 (2d Cir. 2003) ("Our precedents instruct that to
qualify as an adjudication 'on the merits,' a state court deci-
sion need not mention a particular argument or explain the
reasons for rejecting it."), citing Brown v. Artuz, 283 F.3d 492,

498 (2d Cir. 2002), <u>Aparicio v. Artuz</u>, 269 F.3d 78, 93-94 (2d

Cir. 2001) <u>and</u> <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir.

2001); <u>accord</u> <u>Skinner v. Artus</u>, 05 Civ. 3675 (GEL), 2006 WL

452019 at *2 (S.D.N.Y. Feb. 23, 2006) ("[D]enial of claims

without opinion but without indicating that denial was on proce-

dural grounds is adjudication on the merits").

Petitioner's third post-conviction motion addressed his

<u>Apprendi</u>/<u>Ring</u> claim and his ineffective assistance of counsel

claim. In her 26-page decision, Justice Kahn expressly noted

certain procedural deficiencies with respect to petitioner's

ineffective assistance of counsel claim;[6] however, she adjudi-

cated petitioner's <u>Apprendi</u> claim on the merits.[7] Accordingly,

---

[6]For example, in rejecting petitioner's ineffective
assistance of counsel claim, Justice Kahn explained:
"[D]efendant could have raised [his] claims on either of his two
prior post-conviction motions, and for that reason, as well, his
motion [to vacate judgment] on this ground is denied," citing
N.Y. Crim. Proc. L. § 440.10 (3)(c) (8/04 Order at 21). In
addition, Justice Kahn noted that petitioner's ineffective
assistance of counsel claim "is not properly asserted on a motion
to set aside a sentence pursuant to CPL § 440.20. . . . [§
440.20] deals exclusively with legal defects in the sentence
itself, and does not provide a vehicle for the review of the
adequacy of counsel's representation in the matter" (8/04 Order
at 22).

[7]Justice Kahn held, and subsequently reaffirmed upon motion
for reconsideration (10/04 Order at 5), that petitioner's
sentencing was "excluded from the <u>Apprendi</u> rubric," citing <u>People
v. Rosen</u>, 96 N.Y.2d 329, 752 N.E.2d 844, 728 N.Y.S.2d 407 (2001)
(8/04 Order at 20).

Justice Kahn's decision with respect to petitioner's <u>Apprendi</u>
claim is entitled to deferential review under 28 U.S.C. §
2254(d), while petitioner's ineffective assistance of counsel
claim will be reviewed under a <u>de</u> <u>novo</u> standard.

C.   <u>The Merits of Petitioner's Remaining Claims</u>

   1.   Petitioner's Claims Concerning the
        <u>911 Call of an Identifying Witness</u>

Petitioner is claiming, in essence, that the prosecu-
tion withheld potentially exculpatory material and tampered with
evidence by altering the tape recording of Becker's 911 call.
The recording of the call, contains Becker's detailed description
of petitioner.  In support of these accusations, petitioner
relies heavily on the contentions he made in his first two
Section 440.10 motions.  For example, petitioner alleges that the
first time he heard the tape while awaiting trial, Becker stated
that petitioner was wearing "a black baseball hat;" however, when
the tape was played at trial, Becker stated that petitioner was
wearing a "black leather hat."  Petitioner also cites to certain
purported discrepancies in Becker's descriptions of the hat as
evidence that the 911 recording was tampered with, namely
Becker's signed witness statement, the prosecution's disclosure
form listing property obtained from petitioner, Becker's testi-

mony at trial and the "sprint-print-out" of 911 call (see Pet.
Mem. at Pt. III; Pet. Traverse at 1-6; see also generally 3/99
440.10 Motion; 12/01 440.10 Motion).

Petitioner makes three arguments in support of his
claim that his federal constitutional rights were violated by the
prosecution's use of this 911 tape. First, petitioner argues
that the prosecution violated its obligations under Brady v.
Maryland, 373 U.S. 83 (1963), by failing to disclose a purported
discrepancy between the tape recording and the "sprint report" of
that 911 call. Second, petitioner argues that his Due Process
right to a fair trial was violated by the prosecution's use of
allegedly altered evidence. Finally, petitioner claims that his
right to due process was violated because his Section 440.10
motions addressing the 911 recording were denied without a
hearing or an opinion.

Petitioner's bald accusations are meritless and not
supported by the record.

(a) Petitioner's Brady Claim

First, petitioner's Brady claim is wholly without
merit. The standards applicable to a collateral attack on a
conviction alleging a Brady violation were succinctly set forth
by the Honorable Lewis A. Kaplan, United States District Judge,

34

in <u>Lamberti v. United States</u>, 22 F. Supp.2d 60, 66-67 (S.D.N.Y. 1998), <u>aff'd</u> <u>sub</u> <u>nom</u>. <u>without</u> <u>published</u> <u>opinion</u>, <u>Badalamenti v. United States</u>, 201 F.3d 430 (2d Cir. 1999):

> In order to establish a <u>Brady v. Maryland</u> viola-tion, the defendant must show that (1) the government suppressed favorable evidence, and (2) the evidence the government suppressed was material. A defendant cannot satisfy the suppression requirement if the defendant, directly or through counsel, "either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence." As for the materi-ality requirement, "favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been differ-ent." "A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome' of the case."

(Footnotes and citations omitted). <u>See</u> <u>also</u> <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004); <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999); <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 250-51 (2d Cir. 1998); <u>Leake v. Senkowski</u>, 01 Civ. 7559 (SHS)(GWG), 2004 WL 1464889 at *19 (S.D.N.Y. June 30, 2004) (Report & Recom-mendation).

Petitioner claims that the prosecution violated its <u>Brady</u> obligation by failing to disclose a purported discrepancy between the 911 tape recording and the "sprint report" of that 911 call. Even assuming <u>arguendo</u> that the tape recording of the 911 call and the Sprint printout of the call are both material,

petitioner has failed to establish an indispensable element of a
<u>Brady</u> violation -- that the prosecution "suppressed" this evi-
dence.

Here, petitioner was provided with a tape of the 911
call before trial, as well as all of the documentary evidence
that petitioner now offers in support of his allegations, namely:
a copy of Becker's signed witness statement, the prosecution's
disclosure form listing property obtained from petitioner and a
copy of the Sprint printout of the 911 call.  Petitioner not only
concedes that he listened to the tape while awaiting trial, he
also attached copies of Becker's witness statement, the Sprint
printout and the disclosure form to his first Section 440.10
motion (<u>see</u> 3/99 440.10 Motion at 3, 10 and Exhibits A, B and C,
respectively, annexed thereto), and noted in that motion that he
wanted "to check his paperwork" before he made these accusations
(<u>see</u> 3/99 440.10 Motion at 10).  Thus, it appears from the record
that petitioner was in possession of the very evidence which he
claims the prosecution suppressed.

Furthermore, petitioner's failure to take advantage of
any purported discrepancies in the hat's description -- which, as
discussed above, petitioner was on notice of -- does not give
rise to a <u>Brady</u> violation.  <u>See</u> <u>Leka v. Portuondo</u>, 257 F.3d 89,
100 (2d Cir. 2001) ("'Evidence is not suppressed if the defendant

36

either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.'"), quoting <u>United States v. LeRoy</u>, 687 F.2d 610, 618 (2d Cir. 1982); <u>United States v. Zackson</u>, 6 F.3d 911, 918 (2d Cir. 1993) (same); <u>United States v. Douglas</u>, 415 F. Supp.2d 329, 337 (S.D.N.Y. 2006) (same).  For example, Becker testified at trial that he described petitioner to the 911 operator as wearing "a black leather baseball cap" (<u>see</u> Resp't Mem. at 39).  The 911 tape was admitted into evidence and played for the jury while Becker was on the stand (Resp't. App. Brf. at 38).  Petitioner concedes, as he must, that the "defense had an opportunity to cross-examine [Becker] after the initial playing [of the 911 tape] at the start of trial" (Pet. <u>Pro</u> <u>Se</u> App. Brf. at 7).  Petitioner did not, however, attempt to impeach Becker during cross-examination about the alleged inconsistency between his description of the hat on the 911 tape and at trial, as compared to his signed witness statement (<u>see</u> Resp't Mem. at 39).  Petitioner's failure to exploit material provided to him does not establish a <u>Brady</u> violation.

Accordingly, I conclude that petitioner's <u>Brady</u> claim is contrary to the evidence and should, therefore, be dismissed. <u>See</u>, <u>e.g.</u>, <u>Ferguson v. Walker</u>, 00 Civ. 1356 (LTS)(AJP), 2002 WL 31246533 at *13-*14 (S.D.N.Y. Oct. 7, 2002) (denying <u>Brady</u> claim

where petitioner did not indicate what evidence was allegedly withheld); Cruz v. Artuz, 97-CV-2508 (FB), 2002 WL 1359386 at *14 (E.D.N.Y. June 24, 2002) (denying habeas relief where Brady claim was speculative, conclusory and unsupported); Grullon v. United States, 99 Civ. 1877 (JFK), 2001 WL 43603 at *6 (S.D.N.Y. Jan. 17, 2001) (denying Brady claim where petitioner provided no details or evidence to support his allegations); Franza v. Stinson, 58 F. Supp.2d 124, 154 (S.D.N.Y. 1999) (collecting cases).

### (b)  Petitioner's Evidence Tampering Claim

Apart from the self-serving and conclusory allegations contained in his petition and Section 440.10 motions, petitioner has failed to offer any credible evidence that would even re-motely support his claim that the prosecution tampered with the 911 tape.

It is telling that petitioner waited until the eleventh hour -- long after he heard the tape played at trial and after he had filed his appellate briefs -- to raise such a serious accusa-tion, especially when, as discussed above, all of the documents offered in support of this claim were available to petitioner either before or during trial.  Both of petitioner's Section 440.10 motions in which he raised this issue were denied on the

merits -- albeit without opinion -- presumably because petitioner's claim was frivolous. See United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970) (in the context of habeas corpus "[a] hearing is not required where petitioner's allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous."); see also Jimenez v. United States, 90 Civ. 2712 (LBS), 1990 WL 176386 at *1 (S.D.N.Y. Nov. 9, 1990) (same). Accord Vess v. LaVallee, 420 F. Supp. 964, 966 (E.D.N.Y. 1976) ("[A] hearing is not required if the allegations are 'patently frivolous'"), quoting Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 119 (1956); Ormento v. United States, 328 F. Supp. 246, 252 (S.D.N.Y. 1971) (same).

Without more, petitioner's uncorroborated averment that the 911 tape he listened to while awaiting trial was "different" from the one played in court and his reference to purported inconsistencies between the various descriptions of the hat are insufficient to warrant the issuance of a writ of habeas corpus. See generally Whitaker v. Meachum, 123 F.3d 714, 714 (2d Cir. 1997) ("The burden of proving a constitutional claim on federal habeas corpus review lies with the petitioner."), quoting Wolfrath v. LaVallee, 576 F.2d 965, 971 (2d Cir. 1978).

Furthermore, "allegations of tampering go only to the weight of the evidence and not its admissibility." Crawford v.

<u>Artuz</u>, 165 F. Supp.2d 627, 636 (S.D.N.Y. 2001), <u>citing</u> <u>United</u>
<u>States v. Sovie</u>, 122 F.3d 122, 127-28 (2d Cir. 1997).  It is well
settled, however, that a claim that a verdict is against the
weight of the evidence is purely a state law claim that is not
cognizable in a federal habeas corpus proceeding.  <u>See</u>, <u>e.g.</u>, <u>Ex</u>
<u>parte Craig</u>, 282 F. 138, 148 (2d Cir. 1922), <u>aff'd</u>, 263 U.S. 255
(1923); <u>Feliz v. Conway</u>, 378 F. Supp.2d 425, 430 n.3 (S.D.N.Y.
2005); <u>Correa v. Duncan</u>, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001).

          Based on the foregoing, I conclude that petitioner's
evidence tampering claim is meritless and should, therefore, be
dismissed.  <u>See Utenyshev v. Portuondo</u>, 00-CV-6529 (JBW),
03-MISC-0066 (JBW), 2003 WL 21499841 at *9 (E.D.N.Y. June 11,
2003) (holding that a habeas petitioner's claim of evidence
tampering was "patently frivolous" and "unsupported by any
evidence" because petitioner could not explain how his purported
evidence actually established that evidence was tampered with);
<u>Ramos v. Costello</u>, 96 Civ. 3659 (LLS), 1997 WL 231129 at *4
(S.D.N.Y. May 7, 1997) ("'[W]here extraordinary relief by writ of
habeas corpus is sought, evidence of actual tampering is neces-
sary.'"), <u>quoting</u> <u>Alfano v. United States</u>, 555 F.2d 1128, 1129
n.2 (2d Cir. 1977).

(c)   Petitioner's Due Process Claim Based
                         on His Section 440.10 Motions Being
                         <u>Denied Without a Hearing or an Opinion</u>


        Finally, petitioner argues that his Due Process rights

were violated because the Trial Court failed to comply with the

requirements of N.Y. Crim. Proc. L. § 440.30(7)[8] by not "provid-

ing a reason for [its decisions] on the record" (<u>see</u>, <u>e</u>.<u>g</u>., Pet.

Traverse at 2).

        It is a fundamental aspect of habeas corpus review,

however, that only violations of federal law are cognizable in a

federal habeas corpus proceeding; a violation of state law

provides no basis for habeas relief.  28 U.S.C. § 2254(a);

<u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991); <u>Lewis v. Jeffers</u>, 497

U.S. 764, 780 (1990); <u>Davis v. Strack</u>, 270 F.3d 111, 123 (2d Cir.

2001); <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir. 1998).

Therefore, a claim based upon a violation of N.Y. Crim. Proc. L.

§ 440.30 is purely a state law claim that is not cognizable in a

federal habeas corpus proceeding.[9]  As explained by the Honorable

────────────────────────

        [8]N.Y. Crim. Proc. L. § 440.30(7) states:  "Regardless of
whether a hearing was conducted, the court, upon determining the
motion, must set forth on the record its findings of fact, its
conclusions of law and the reasons for its determination."

        [9]Petitioner commenced an Article 78 proceeding on February
11, 2000, alleging that his first Section 440.10 motion was
denied without a hearing and failed to provide the reasons for
                                          (continued...)

Denny Chin, United States District Judge: "Although the state court may have violated C.P.L. § 440.30(7) by failing to set forth the reasons for denying petitioner's first motion to vacate his conviction, this claim lacks the necessary constitutional component for federal habeas corpus review." Smith v. Lacy, 01 Civ. 4318(DC), 2002 WL 826825 at *7 (S.D.N.Y. Apr. 30, 2002); see also Delgado v. Walker, 798 F. Supp. 107, 116 (E.D.N.Y. 1992) ("Petitioner's complaint about the trial court's noncompliance with § 440.30(7), a state law, is not a basis for issuing a writ of habeas corpus."), citing Turner v. Sullivan, 661 F. Supp. 535, 540 (E.D.N.Y. 1987), aff'd, 842 F.2d 1288 (2d Cir. 1988).

### (d)  Summary

Based on the foregoing, all of petitioner's claims concerning the 911 tape recording are without merit and should be dismissed.

### 2.  Petitioner's Apprendi/Ring Claim

Petitioner next claims that the statutory procedures employed by the Sentencing Court to adjudicate him as a persis-

---

[9](...continued)
its denial.  The application was denied (Resp't Mem. at 17, n.8).

tent felony offender[10] were violative of the Supreme Court's decisions in Apprendi v. New Jeresy, 530 U.S. 466 (2000) and Ring v. Arizona, 536 U.S. 584 (2002).

Petitioner's Apprendi claim is foreclosed by the Second Circuit's decision in Brown v. Greiner, 409 F.3d 523, 526, 533-35 (2d Cir. 2005), cert. denied sub nom., Brown v. Ercole, 126 S. Ct. 1566 (2006), in which the court upheld New York's persistent felony offender statute against similar Apprendi challenges.  In

---

[10]New York law defines a "persistent felony offender" as: "[A] person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies . . . ." N.Y. Penal L. § 70.10(1)(a).  A persistent felony offender's sentence may be enhanced, at the sentencing court's discretion, to include "extended incarceration and life-time supervision . . . ."  N.Y. Penal L. § 70.10(2).

The procedure for imposing a persistent felony offender sentence is set forth in N.Y. Crim. Proc. L. § 400.20(1), which provides in pertinent part:

> Applicability.  The provisions of this section govern the procedure that must be followed in order to impose the persistent felony offender sentence authorized by subdivision two of section 70.10 of the penal law.  Such sentence may not be imposed unless, based upon evidence in the record of a hearing held pursuant to this section, the court (a) has found that the defendant is a persistent felony offender as defined in subdivision one of section 70.10 of the penal law, and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest.

Brown, the Second Circuit held that "it was not unreasonable, in light of then-existing Supreme Court precedent, for the state courts to conclude [in People v. Rosen, 96 N.Y.2d 329, 752 N.E.2d 844, 728 N.Y.S.2d 407 (2001)] that a sentencing judge's 'opinion' as to what type of sentence would 'best serve the public interest' is not a factual finding within the meaning of Apprendi." Id. at 526, 533-35.

Accordingly, petitioner's claim that New York's statutory procedure for adjudicating him as a persistent felony offender was violative of Apprendi is without merit in light of Brown. See Witherspoon v. Woods, 04-CV-5528 (JFB), 2006 WL 721510 at *5 (E.D.N.Y. Mar. 6, 2006) (collecting cases in this Circuit where courts have held that the "holding in Brown requires that this Court deny [petitioner's] petition to the extent it seeks habeas relief under Apprendi"), citing Alston v. Woods, 04 Civ. 8017 (WHP)(GWG), 2005 WL 3312818 (S.D.N.Y. Dec. 8, 2005) (Report & Recommendation); Brown v. Miller, 04 Civ. 9804 (LBS), 2005 WL 2173761 at *1 (S.D.N.Y. Sept. 7, 2005), McPherson v. Greiner, 02 Civ. 2726 (DLC), 2005 WL 2024737 at *11-12 (S.D.N.Y. Aug. 23, 2005), and Hernandez v. Conway, 03 Civ. 5353 (SHS), 2005 WL 1606062 at * 1 (S.D.N.Y. July 7, 2005).

Petitioner's parallel claim that his sentencing under New York's persistent felony offender statute was also violative

of the Supreme Court's decision in <u>Ring v. Arizona</u>, <u>supra</u>, 536 U.S. at 584, also fails. First, <u>Ring</u> does not apply to petitioner's claim because it was not "clearly established federal law" at the time that petitioner's conviction became final on direct review. The New York Court of Appeals denied petitioner's application for leave to appeal on July 2, 2001. Petitioner had ninety days thereafter -- or until September 30, 2001 -- to file a petition for a writ of <u>certiorari</u> with the Supreme Court. <u>See</u> Sup.Ct. R. 13(1). Accordingly, even if I utilize the date of September 30, 2001 to determine what was "clearly established federal law" at the time that petitioner's conviction became final,[11] <u>Ring</u> is not applicable to petitioner's claim since it was decided by the Supreme Court on June 24, 2002. <u>See</u> <u>Hernandez</u>

---

[11]As Your Honor noted in <u>Hernandez v. Conway</u>, <u>supra</u>, 2005 WL 1606062 at *1:

> The Second Circuit has written that the Supreme Court has "provided inconsistent guidance on the precise time to which a federal court should look to assess what was 'clearly established Federal law, as determined by the Supreme Court."' <u>Brown</u>, 409 F.3d at 534, n.3 (<u>quoting</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). The court must look to the state of federal law either "as of the time of the relevant state-court decision" or "at the time [petitioner's] state-court conviction became final." <u>Brown</u>, 409 F.3d at 534, n.3 (<u>quoting</u> <u>Williams</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389) (internal quotation marks omitted).

<u>Accord</u> <u>Alston v. Woods</u>, <u>supra</u>, 2005 WL 3312818 at *4, n.2; <u>McPherson v. Greiner</u>, <u>supra</u>, 2005 WL 2024737 at *12.

v. Conway, supra, 2005 WL 1606062 at *2 (explaining that because petitioner's sentence became final before Ring was decided "the 'universe of clearly established federal law' applicable to [the] petition [did] not include Ring, but rather, just as in Brown, [was] 'limited to Apprendi and the cases that preceded it'"), quoting Brown v. Greiner, supra, 409 F.3d at 534, n.3. See also Schriro v. Summerlin, 542 U.S. 348, 358 (2004) (holding that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review"); Garcia v. United States, 04-CV-0465, 2004 WL 1752588 at *5 (N.D.N.Y. Aug. 4, 2004) (noting that Ring does not apply retroactively to cases on collateral review).

Second, even if Ring applied to petitioner's claim, his claim would, nevertheless, be meritless. The Honorable Joseph F. Bianco, United States District Judge, discussed the precise issue petitioner raised here in Witherspoon v. Woods, supra, 2006 WL 721510 at *6-*7, and concluded that: "[N]othing in Ring's holding or the Brown decision suggests that the Second Circuit's reasoning in Brown would be different were it to evaluate New York's persistent felony offender statute under Ring." 2006 WL 721510 at *7. See also Alston v. Woods, supra, 2005 WL 3312818 at *5 (holding that "post-Apprendi cases [such as Ring] are of no help to [petitioner] because they break no new ground on what

46

constitutes judicial factfinding" and that "[n]one of these [post-<u>Apprendi</u>] cases alter the effect of <u>Brown</u>"); <u>Brown v. Miller</u>, <u>supra</u>, 2005 WL 2173761 at *1 (holding that discretionary sentencing under New York's persistent felony offender statute was not an unreasonable application of <u>Ring</u>).

Accordingly, petitioner's claim that the statutory procedure employed by the Sentencing Court to adjudicate him a persistent felony offender was violative of <u>Apprendi</u> and <u>Ring</u> is without merit and should be dismissed.

### 3. Petitioner's Ineffective Assistance of Counsel Claims

In order to prevail on an ineffective assistance of counsel claim, a habeas petitioner must meet the now-familiar two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 686-87 (1984):

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> . . . .
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "coun-

sel" guaranteed by the Sixth Amendment. Second, the
defendant must show that the deficient performance
prejudiced the defense. This requires showing that
counsel's errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is
reliable. Unless a defendant makes both showings, it
cannot be said that the conviction . . . resulted from
a breakdown in the adversary process that renders the
result unreliable.

Accord Davis v. Greiner, 428 F.3d 81, 87 (2d Cir. 2005); Greiner

v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid v. Bennett, 296

F.3d 58, 62-63 (2d Cir. 2002); Hernandez v. United States, 202

F.3d 486, 488 (2d Cir. 2000); Guerrero v. United States, 186 F.3d

275, 281-82 (2d Cir. 1999); McKee v. United States, 167 F.3d 103,

106-07 (2d Cir. 1999); Jackson v. Leonardo, 162 F.3d 81, 85 (2d

Cir. 1998).

In determining whether counsel's performance was

objectively deficient, courts "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the [petitioner] must overcome

the presumption that, under the circumstances, the challenged

action might be considered sound trial strategy." Strickland v.

Washington, supra, 466 U.S. at 689 (internal quotation marks

omitted); accord Bell v. Cone, 535 U.S. 685, 698 (2002).

The second prong of the test -- actual prejudice --

requires that the petitioner show that, but for trial counsel's

errors, there is a "reasonable probability" that the result of

the trial would have been different.  "A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 694.

Finally, since the test outlined in <u>Strickland</u> is
conjunctive, a habeas petitioner's failure to satisfy either
prong requires that the challenge to the conviction be rejected.
<u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 697.

Petitioner appears to be raising two separate specifi-
cations in connection with his claim that he received ineffective
assistance of counsel during sentencing, namely:  (1) counsel
failed to advise and prepare him properly for sentencing (<u>see</u>
Pet. 11/04 Mem. at 8, 18-21) and (2) counsel did not object to
the Sentencing Court's failure to state on the record its reasons
for adjudicating petitioner a persistent felony offender, thus
failing to preserve the objection for appellate review (<u>see</u> Pet.
11/04 Mem. at 8, 22-23, 27-29).[12]

---

[12]To the extent that petitioner is also claiming, as he did
in his third post-conviction motion, that trial counsel was
ineffective because counsel failed to challenge the
constitutionally of New York's persistent felony offender statute
at the time of his sentencing in light of <u>Apprendi</u> and <u>Ring</u>,
petitioner's claim is fatally flawed.  As noted above, petitioner
was sentenced on March 15, 1999; <u>Apprendi</u> and <u>Ring</u> were decided
in 2000 and 2002, respectively.  Counsel cannot be ineffective
for failing to predict future decisions of the Supreme Court.

## (a) Counsel's Failure To Advise and
## Prepare Petitioner for Sentencing

Petitioner first claims, in essence, that counsel failed to advise and prepare him properly for sentencing. Specifically, petitioner argues that counsel: (1) did not discuss with him "any of the procedures surrounding sentencing," (2) failed to explain to him "what was required at the proceeding or prepare petitioner in any manner prior to or during the proceeding," (3) failed to investigate "petitioner's life history for mitigating evidence," such as the alleged twelve years where he had "no contact with the law" and (4) did not inform him that the failure to challenge the statement of prior convictions offered by prosecution would result in a waiver (see Pet. 11/04 Mem. at 18, 29 and Memorandum of Law annexed thereto at 1-2, 7-8).

First, many of petitioner's allegations are belied by the record. During the sentencing hearing, petitioner was expressly advised by the Sentencing Court that he had the right to challenge the prior felony convictions listed in the prosecution's papers, that his failure to do so would constitute a waiver and that he should to confer with counsel before answering any questions (Sent. Tr. 2-3). After conferring with counsel,

petitioner conceded that he was the person who was convicted of the prior felonies and, furthermore, that he did not wish to challenge the constitutionally of the prior convictions (Sent. Tr. 4). The sentencing transcript provides, in pertinent part, as follows:

> THE COURT: You have the right to challenge these prior convictions on the grounds that they were obtained in violation of your constitutional rights. If you don't make a challenge at the this time it will be deemed a waiver by you of any allegation of unconstitutionally. You may admit or deny that you are the person mentioned here in this statement. Before you answer each of my following questions please speak to your attorney.

> THE COURT: Mr. Elliot, having been informed of your rights, having spoken to your attorney, do you now admit that you are the same person mentioned herein this statement and that you so convicted these crimes?

> DEFENDANT: Yes.

> THE COURT: Do you wish to challenge the constitutionally of these prior convictions?

> DEFENDANT: No.

(Sent. Tr. 3-4). Furthermore, counsel also argued, successfully, that petitioner was not a persistent violent felony offender and that the enhanced sentence was, therefore, discretionary rather than mandatory (Sent Tr. 4-6). Defense counsel further argued that the Court should only impose a sentence of between seven to fifteen years based on the following mitigating factors: (1)

51

petitioner was 58-years old and had health problems, including internal bleeding; (2) none of petitioner's prior crimes involved acts of violence, weapons or caused injury; (3) petitioner had family, including two adult children, a sister and a brother, and (4) petitioner had a high school education and some college. Defense counsel concluded by arguing that, based on the above mitigating factors, a sentence of fifteen years to life would be "Draconian" (Sent. Tr. 7-10). Thus, it is apparent from the record that petitioner was advised by the Sentencing Court that his failure to challenge the prior convictions would result in a waiver and that counsel presented significant mitigating factors to the Court in support of a more lenient sentence.

Second, even if I were to accept petitioner's allegations as true, petitioner has not shown how he was prejudiced by counsel's failure to advise and prepare him properly for sentencing. The second prong of <u>Strickland</u> requires that petitioner show prejudice resulting from counsel's unreasonably deficient performance. Assuming <u>arguendo</u> that petitioner's counsel's actions were unreasonably deficient, petitioner's claim still fails because he has not shown that he was prejudiced by counsel's failure to advise and prepare him for sentencing. With respect to the prejudice prong, petitioner claims that he was not "afforded the opportunity to present evidence that would have

shown that between 1975 and 1986 . . . he had no contact with the
law" (Pet. 11/04 Mem. at 29).  On the contrary, petitioner was
provided with two separate opportunities to speak on his own
behalf during sentencing (Sent. Tr. 10, 12).  Petitioner, how-
ever, did not avail himself of either opportunity to offer any
additional mitigating factors.  Rather, he merely adhered to his
position at trial -- that he did not enter the apartment -- and
asked the Court for leniency (Sent. Tr. 10-12).  Even if peti-
tioner made the above argument or presented evidence on this
score, petitioner would still have had to face the formidable
task of contending with his long, undisputed criminal history,
which includes three prior felony convictions -- two of which
came after his alleged twelve-year hiatus from crime -- and eight
misdemeanors.  Petitioner offers no other evidence suggesting
that additional preparation would have impacted the Sentencing
Court's finding petitioner a persistent felony offender.

        In light of this record, there is no reason to believe
that additional preparation by counsel would have had any affect
on the Sentencing Court's decision.  Accordingly, petitioner's
ineffective assistance of counsel claim based on counsel's
alleged failure to advise and prepare petitioner sentencing
should be denied.

        (b)   Counsel's Failure To Object To the
              Sentencing Court's Alleged Deficiency in
              <u>Complying With N.Y. Crim. Proc. L. § 400.20</u>

      Petitioner also claims his trial counsel was ineffec-
tive because counsel did not object to the Sentencing Court's
failure to state on the record, in accordance with N.Y. Crim.
Proc. L. § 400.20, its reasons for adjudicating petitioner a
persistent felony offender, thus failing to preserve petitioner's
right to appellate review on this issue.

      I note from the outset that the Appellate Division held
that, although this issue was unpreserved, "there was sufficient
compliance with the statutory notice and hearing provisions."
<u>People v. Elliot</u>, <u>supra</u>, 283 A.D.2d at 183-184, 726 N.Y.S.2d at
8.  In light of the Appellate Division's decision, trial coun-
sel's performance cannot be found deficient because the objection
would have been unsuccessful as a matter of state law.  <u>See</u>
<u>United States v. Arena</u>, 180 F.3d 380, 396 (2d Cir. 1999) ("Fail-
ure to make a meritless argument does not amount to ineffective
assistance."), <u>citing</u> <u>United States v. Kirsh</u>, 54 F.3d 1062, 1071
(2d Cir. 1995); <u>Torres v. McGrath</u>, 407 F. Supp.2d 551, 562
(S.D.N.Y. 2006) (same); <u>Parrilla v. Goord</u>, 02 Civ. 5443 (WHP),
2005 WL 1422132 at *13 (S.D.N.Y. June 20, 2005) (same); <u>Gil v.
Mazzuca</u>, 03 Civ. 3316 (WHP)(GWG), 2004 WL 389103 at *9 (S.D.N.Y.

Mar. 3, 2004) (Report & Recommendation), adopted by, 2004 WL
3524334 (S.D.N.Y. Sept. 19, 2004) ("[W]hen [the] underlying
motion would have been unsuccessful, trial counsel's failure to
make the motion does not constitute ineffective assistance of
counsel."), citing Davis v. McLaughlin, 122 F. Supp.2d 437,
443-44 (S.D.N.Y. 2000).

Furthermore, petitioner has failed to show how he was
prejudiced by counsel's alleged failure to raise an objection.
Even if a timely objection had been made and sustained, the
remedy would have been for the Sentencing Court to state the
reasons for imposing its sentence on the record.  Simply making
the objection would not have yielded a different result in the
ultimate sentence.  See, e.g., Phillips v. United States, 97 Civ.
2571 (LAP), 2001 WL 274092 at *4 (S.D.N.Y. Mar. 19, 2001) (ex-
plaining that "petitioner [had] failed to demonstrate that . . .
but for counsel's failure to object, the result [at sentencing]
would have been different"); accord Ennis v. Walker, 00 Civ. 2875
(DAB)(AJP), 2001 WL 409530 at *15-*18 (S.D.N.Y. Apr. 6, 2001)
(Report & Recommendation) (collecting cases where ineffective
assistance of counsel claims were raised, and largely denied,
based on counsel's failure to challenge a persistent felony
offender adjudication).

Thus, petitioner's ineffective assistance of counsel claim based on counsel's failure to object to the Sentencing Court's not stating on the record its reasons for adjudicating petitioner a persistent felony offender should be denied as meritless.

### (c) <u>Summary</u>

Based on the above analysis, petitioner has failed to show that any of the two specifications of ineffective assistance of trial counsel raised in his habeas petition have merit.

## IV. <u>Conclusion</u>

For all the foregoing reasons, I respectfully recommend that Elliot's petition be denied in all respects.

In addition, since petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253(c). To warrant the issuance of certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Middleton v. Attorneys General of States of N.Y. & Pennsylvania</u>, 396 F.3d 207,

209 (2d Cir. 2005) (per curiam)(quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists as to the proper resolution of petitioner's claim.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, United States District Judge, 500 Pearl Street, Room 1010, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Stein.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A

WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. <u>Thomas</u>
<u>v. Arn</u>, 474 U.S. 140 (1985); <u>IUE AFL-CIO Pension Fund v.</u>
<u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 986
F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d
55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-
238 (2d Cir. 1983).

Dated:   New York, New York
         May 1, 2006

                              Respectfully submitted,

                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Rodney Elliot
99-A-1945
Eastern New York Correctional Facility
P.O. Box. 338
Napanoch, New York 12458-0338


Willa J. Bernstein, Esq.
Assistant Attorney General
Office of the Attorney General
State of New York
120 Broadway, 24th Floor
New York, New York  10271